# REPUBLICAN STATE CENTRAL COMMITTEE OF ARIZONA ET AL. *v.* THE RIPON SOCIETY INC. ET AL.

No. A–179. Decided August 16, 1972

See: 343 F. Supp. 168.

MR. JUSTICE REHNQUIST, Circuit Justice.

I am asked to stay the effect of an injunction entered by the United States District Court for the District of Columbia, which prohibited the Republican National Party's 1972 Convention from adopting a certain mode of allocating delegates to that party's convention in 1976. On August 11, 1972, MR. JUSTICE DOUGLAS denied a stay, and that application has been renewed to me.

Since 1948 the Republican National Party has adopted at each presidential nominating convention a formula for allocating among the States delegates to the next convention. This formula has included a "bonus" of six delegates awarded to each State that cast its electoral college votes for the Republican presidential nominee in the previous presidential election, or has elected a Republican senator, governor, or majority of its congressional delegation at any election within the previous four years. Respondents filed suit in the United States District Court for the District of Columbia, asking for a declaratory judgment that such a

"bonus" system of allocating delegates was unconstitutional, and asking that the Republican National Party be enjoined from adopting such a formula at its 1972 nominating convention. The District Court, in reliance upon *Georgia* v. *National Democratic Party*, 145 U. S. App. D. C. 102, 447 F. 2d 1271 (1971), cert. denied, 404 U. S. 858 (1971), and *Bode* v. *National Democratic Party*, 146 U. S. App. D. C. 373, 452 F. 2d 1302 (1971), cert. denied, 404 U. S. 1019 (1972), held that allocation of delegates was state action, and that the complaint before it was justiciable. Agreeing with the Republican National Party that, for a system that elects Presidents by casting a State's electoral votes in a bloc, a bonus system of delegate allocation is reasonable to encourage Republican victories within each State, the District Court nonetheless held the allocation of six delegates without regard to the size of the State or its electoral college votes, to be a denial of equal protection. It therefore entered the following injunction:

> "That Defendants are hereby enjoined from adopting at the 1972 Republican National Convention a formula for apportionment of delegates to the 1976 Convention which would allocate a uniform number of bonus delegates to states qualifying for them, with no relation to the state's electoral college votes, Republican votes cast in certain specified elections, or some combination of these factors."

After an appeal was perfected these applicants moved the United States Court of Appeals for the District of Columbia Circuit for leave to intervene and for a stay of the District Court's injunction. Intervention was granted, but a divided panel of the District of Columbia Circuit, on August 3, denied a stay without opinion. Respondents do not now challenge the right of the applicants, state central committees of the Republican National Party, to seek a stay from this Court. With the

Republican National Convention scheduled to commence August 21, prompt action is requested on the ground that an unreviewed court injunction threatens direct intervention with the conduct of the convention, in a manner similar to that confronting this Court in *O'Brien* v. *Brown, ante,* p. 1.

As we said in *O'Brien, supra,* an application for a stay calls "for a weighing of three basic factors: (a) whether irreparable injury may occur absent a stay; (b) the probability that the [District Court] was in error in holding that the merits of these controversies were appropriate for decision by federal courts; and (c) the public interests that may be affected by the operation of the [injunction]." Applicants contend that to leave the injunction in effect will work irreparable injury because the Republican National Party has always allocated delegates to its next convention at the current convention, and has no machinery for amending that formula. Therefore, they say, the injunction will permanently preclude the adoption of a "bonus" formula, regardless of whether the District Court is reversed. Respondents allege that no irreparable injury will occur, because the convention can either provide amendatory procedures for use in the event that the bonus formula is not vindicated on appeal, or it can adopt a contingent delegate allocation plan, to take into account the pending federal court proceedings. But to allow the injunction to stand would have at least some impact on the deliberations and decisions of the Republican National Convention akin if not identical to that we found in *O'Brien, supra:*

> "Absent a stay, the mandate of the Court of Appeals denies to the Democratic National Convention its traditional power to pass on the credentials of the California delegates in question. The grant of a stay, on the other hand, will not foreclose the Con-

vention's giving the respective litigants in both cases the relief they sought in federal courts." *Id.,* at 3.

In the case at bar, of course, we deal with a delegate-allocation dispute that retains importance until 1976, rather than a credentials dispute such as was involved in *O'Brien* v. *Brown,* which would mean nothing after the close of the 1972 Democratic National Convention. If the injunction of the District Court were to compel the 1972 Republican National Convention to eschew a bonus-allocation formula which it would otherwise have chosen, this case would be moot. There would be no controversy left to review. On the other hand, to stay the injunction pending review will permit the respondents to make their case before the convention, and assuming the bonus formula is adopted, will preserve to applicants judicial review of the District Court's order declaring the bonus formula unconstitutional. If that order should be affirmed, I have no doubt that appropriate remedies are available to insure that the Republican National Party delegate allocation is in conformity with the order, or that the party would take whatever steps are necessary to bring its allocation formula into conformity with the order. The fact that a stay here, instead of precluding any judicial review of the final action of the Republican National Convention, as could have been the result of the action taken in *O'Brien, supra,* preserves these issues for review in a manner conducive to careful study and consideration is itself a reason to stay the injunction which was not present in *O'Brien.*

A second reason for staying the effect of the District Court's injunction is drawn from the probability of error in the result below. The District Court did not have the benefit of this Court's writing in *O'Brien, supra,* at

the time it entered its order and injunction There we said:

"No case is cited to us in which any federal court has undertaken to interject itself into the deliberative processes of a national political convention; no holding of this Court up to now gives support for judicial intervention in the circumstances presented here, involving as they do, relationships of great delicacy that are essentially political in nature. Cf. *Luther* v. *Borden,* 7 How. 1 (1849). Judicial intervention in this area traditionally has been approached with great caution and restraint. See *Irish* v. *Democratic-Farmer-Labor Party of Minnesota,* 399 F. 2d 119 (CA8 1968), affirming 287 F. Supp. 794 (Minn. 1968), and cases cited; *Lynch* v. *Torquato,* 343 F. 2d 370 (CA3 1965); *Smith* v. *State Exec. Comm. of Dem. Party of Ga.,* 288 F. Supp. 371 (ND Ga. 1968). Cf. *Ray* v. *Blair,* 343 U. S. 214 (1952). It has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates shall be seated. Thus, these cases involve claims of the power of the federal judiciary to review actions heretofore thought to lie in the control of political parties. Highly important questions are presented concerning justiciability, whether the action of the Credentials Committee is state action, and if so the reach of the Due Process Clause in this unique context. Vital rights of association guaranteed by the Constitution are also involved. While the Court is unwilling to undertake final resolution of the important constitutional questions presented without full briefing and argument and adequate opportunity for de-

liberation, we entertain grave doubts as to the action taken by the Court of Appeals." *Id.*, at 4–5.

While I have authority to grant a stay in this case, 28 U. S. C. § 1651 (a), *Johnson* v. *Stevenson*, 335 U. S. 801 (1948), the fact that such relief has been successively denied by the District Court, the Court of Appeals, and MR. JUSTICE DOUGLAS counsels circumspection notwithstanding the foregoing observations. See, *e. g.*, *Ex parte Stickney*, 82 S. Ct. 465, 7 L. Ed. 2d 435 (1962) (DOUGLAS, J., in chambers). Weighing these competing and frequently imponderable factors as best I can, I have concluded that this case follows so closely on the heels of *O'Brien* and resembles it in so many relevant particulars that the injunctive aspect of the District Court order should be stayed. Accordingly, I have this day entered an order staying that portion of the order of the District Court that enjoins the 1972 Republican National Convention from adopting this "bonus" formula for allocating delegates to the 1976 convention.