**RIPON SOCIETY, INC., et al.,**
**Plaintiffs,**

v.

**NATIONAL REPUBLICAN PARTY and**
**Republican National Committee,**
**Defendants.**

**Civ. A. No. 2238–71.**

United States District Court,
District of Columbia.

Jan. 11, 1974.

George M. Coburn, Washington, D. C., Robert M. Pennoyer, Patterson, Belknap & Webb, New York City, for plaintiffs.

Benton L. Becker, William C. Cramer, James S. Rubin, Washington, D. C., for defendants.

## OPINION

WILLIAM B. JONES, District Judge.

This action has been pending in this Court since the filing of the original complaint on November 8, 1971. That complaint challenged the constitutional validity of the 1972 formula for the apportionment of delegates to the Republican National Convention. On December 3, 1971, the parties stipulated that the complaint would be amended to challenge the formula for apportionment of delegates to the 1976 Republican National Convention, to be adopted at the 1972 Convention. The purpose of the stipulation was to avoid the uncertainty that resulted from the filing of the original complaint and its effect on the 1972 apportionment of delegates to the 1972 Convention. Following the stipulation, the plaintiffs' complaint was amended and thereafter plaintiffs filed a motion for summary judgment. Defendants answered and moved to dismiss the action against the defendant National Republican Party, to quash service and to strike from the pleadings all references to the said defendant. Defendants also moved to dismiss the Ripon Society, Inc., as a plaintiff.

On March 9, 1972, this Court having heard arguments on all the motions, denied the defendant Republican National Committee's motion to dismiss plaintiff Ripon Society, Inc.; denied the motions to dismiss the defendant National Republican Party, to quash service and to strike from the pleadings all references to the latter defendant.

On April 28, 1972, this Court filed its opinion and order granting, in part, plaintiffs' motion for summary judgment and enjoining the defendants from adopting at the 1972 Convention a formula for apportionment of delegates to the 1976 Republican Convention, which would allocate a uniform number of bonus delegates to states qualifying for them, with no relation to the states' electoral college vote, Republican votes cast in certain specified elections, or some combination of these factors. Ripon Society, Inc. v. National Republican Party, 343 F.Supp. 168 (D.D.C.1972).

When the order was entered by the Court, the defendant Republican National Committee appealed to the United States Court of Appeals for this Circuit from all of the orders granted by this Court. Plaintiffs cross-appealed to the extent that the order granting plaintiffs' motion for summary judgment permitted the adoption at the 1972 Republican Convention of a formula of apportionment of delegates to the 1976 Republican Convention, which would award bonus delegates to states producing Republican victories in specified elections, and which according to plaintiffs did not place any rational limit on the number of delegates that such formula might apportion to each of the Territories.

On July 14, 1972, this Court denied motions to intervene by several Republican state central committees and by 1 delegate from the State of Wyoming.

On August 16, 1972, Mr. Justice Rehnquist of the Supreme Court of the United States, upon the application by Republican state committees of 13 states and a delegate from Wyoming, stayed the injunctive portion of this Court's order granting plaintiffs' motion for summary judgment "pending the timely prosecution of the appeals to the [Court of Appeals], and the disposition of the appeals by that Court." Republican State Central Committee of Arizona v. Ripon Society, Inc., et al., 409 U.S. 1222, 93 S.Ct. 1475 (1972).

On November 24, 1972, the Court of Appeals dismissed the appeal to that Court on the motion of defendants. On November 29, 1972, the Court of Appeals on motion of the defendants dismissed the remaining cases on appeal and remanded them to this Court with directions to vacate its judgment and at the same time granted leave to the plaintiffs to file a supplemental complaint. Thereafter, on April 13, 1973, this Court entered an order vacating its April 28, 1972, judgment. Plaintiffs have now filed a supplemental complaint challenging the formula adopted by the 1972 Convention for the apportionment of del-

egates to the 1976 Republican Convention. Plaintiffs have filed a motion for summary judgment and defendants have filed a motion to dismiss, a motion to strike and a motion for summary judgment.[1]

Mr. Justice Rehnquist's stay order was in effect on August 22, 1972, when the Republican National Convention adopted the rules for its 1976 Convention. Rule 30—hereafter referred to as the 1976 formula—was among the rules adopted. According to the affidavit of William C. Cramer, in support of defendants' motions for summary judgment, a subcommittee of the Convention's Temporary Committee on Rules held public hearings and considered 17 proposals for delegate allocation and apportionment to the 1976 Convention.[2] The same affidavit states that, notwithstanding Mr. Justice Rehnquist's stay order, the members of the Rules Committee and the delegates to the 1972 Convention were aware of their duty to draft and adopt a delegate selection formula that "would be constitutionally sound, cognizant of * * * [this Court's] Order of April 28, 1972, and representative of party interests." The 1976 formula (Rule 30)[3] provides

---

1. The Republican State Committee of Pennsylvania filed a motion to intervene, which motion was denied by this Court.

2. Affiant Cramer was Chairman of both the Temporary and the Permanent Rules Committees. At the time of the 1972 Convention he was not counsel for defendants in this case. He entered his appearance here on February 20, 1973.

3.
Rule No. 30
The membership of the next National Convention shall consist of:
A. Delegates
1. Six (6) Delegates at Large from each of the fifty (50) states.
2. Three (3) District Delegates for each Representative in the United States House of Representatives from each state.
3. Fourteen (14) Delegates at Large for the District of Columbia, four (4) Delegates at Large for Guam, eight (8) Delegates at Large from Puerto Rico, and four (4) Delegates at Large for the Virgin Islands.
4. From each State casting its electoral vote, or a majority thereof, for the Republi-

can Nominee for President in the last preceding election: Four and one-half (4½) Delegates at Large plus the number of the Delegates at Large equal to 60% of the electoral vote from each such State. In addition, one Delegate at Large shall be awarded to a State for any and each of the following public officials elected by such State in the year of the last preceding Presidential election or at any subsequent election held prior to January 1, 1976:
(a) A Republican United States Senator: Provided, That no such additional Delegate at Large award to any State shall exceed two;
(b) A Republican Governor: Provided, That no such additional Delegate at Large award to any State shall exceed one; or
(c) a Republican membership of at least half of the State's delegation to the United States House of Representatives: Provided, That no such additional Delegate at Large award to any State shall exceed one.
In the computation of the number of Delegates at Large, any sum of the four and one-half (4½) plus the 60% representing a

for the apportionment and allocation of delegates to the 1976 Convention on the basis of the 1972 election returns as follows:

1. The 1976 Republican Convention will comprise a total of 2,242 delegates from the states, the District of Columbia, Puerto Rico, Guam and the Virgin Islands.

2. 1605 delegates, or 72%, will be apportioned to the states on the basis of 3 delegates for each of the states' 535 electoral votes; that is, 3 delegates for each state's two United States Senators and 3 delegates for each Representative in the United States House of Representatives from each state.

3. 245 delegates, or 11%, will be allocated on the basis of a uniform bonus of 4.5 delegates (rounded to 5) to each of the 49 states which cast its electoral vote for the 1972 nominee for President.

4. 312 delegates, or 14%, will be apportioned to the states on the basis of 60% of the electoral vote of each of the 49 states which cast its electoral vote for the 1972 Republican nominee for President.

5. 50 delegates, or 2%, will be apportioned to states on the basis of one additional delegate to each state which in November, 1972, or at a subsequent election prior to January 1, 1976, elected a Republican Senator, Governor, or Republicans to at least half of the state's seats in the House of Representatives; but in no event shall there be awarded more than 4 delegates to a state.

6. 16 delegates will be allocated to the District of Columbia, 8 to Puerto Rico, and 4 each to Guam and the Virgin Islands; all of which will constitute 1% of the total delegates to the 1976 Republican Convention.[4]

Each delegate to the 1976 Republican Convention will be entitled to 1 vote and in the absence of the delegate his or her alternate may cast the vote. Rule 6 of the Rules of 1976 Republican Convention (Exhibit L–1, Osborn July 31, 1973 affidavit).

It is the constitutional validity of the 1976 formula that plaintiffs' supplemental complaint challenges. Plaintiffs claim that the formula violates the Equal Protection Clause of the Fourteenth and Fifth Amendments to the Constitution and results in invidious discrimination between Republicans of different states, the District of Columbia,

---

fraction shall be increased to the next whole number.

5. If the District of Columbia casts its electoral vote, or a majority thereof, for the Republican Nominee for President in the last preceding Presidential election: Four and one-half (4½) Delegates at Large, plus the number of Delegates at Large equal to 30% of the fourteen (14) Delegates at Large alloted to the District of Columbia. In the computation of the number of Delegates at Large, any sum of the four and one-half (4½) plus the 30% representing a fraction shall be increased to the next whole number.

6. Any State which would receive fewer Delegates under all provisions of this Rule than it received to the 1972 Republican National Convention shall have its number of Delegates increased to the same number of Delegates it received to the 1972 Republican National Convention.

7. In the event this Rule No. 30 is the subject of litigation and is finally adjudicated in the courts to be invalid, then this Rule No. 30 shall be of no force and effect and the Republican National Committee is hereby authorized to adopt the formula which will determine the membership of the next National Convention. No new formula may be so drawn by the Republican National Committee after October 31, 1975.

8. Should it become the duty of the Republican National Committee to implement Section 7 of Rule 30 in voting in said Committee, the Committee members representing any State, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands shall be entitled to cast the same number of votes as said State, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands were entitled to cast in the 1972 Republican National Convention.

B. Alternate Delegates

One (1) Alternate Delegate to each Delegate to the National Convention.

4. For the foregoing breakdown of the number of delegates by categories and the percentages, see the John J. Osborn, Jr. July 31, 1973 affidavit and attached exhibits, all of which have been filed in support of plaintiffs' motion for summary judgment.

Puerto Rico, Guam, the Virgin Islands, and Republicans of different regions.

### I. Defendants' Motions to Dismiss and to Strike

Defendants have moved to dismiss the supplemental complaint as well as to strike certain allegations therefrom. The main thrust of defendants' dismissal motion is that this Court lacks jurisdiction over the subject matter on the grounds that there is no state action involved and further that the matter at issue is non-justiciable.

The questions of state action and justiciability were before this Court at the time it entered its April 28, 1972 judgment. This Court cited State of Georgia et al. v. National Democratic Party et al., 145 U.S.App.D.C. 102, 447 F.2d 1271, cert. den., 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971), and Bode et al. v. National Democratic Party et al., 146 U.S.App.D.C. 373, 452 F.2d 1302 (1971), cert. den., 404 U.S. 1019, 92 S. Ct. 684, 30 L.Ed.2d 668 (1972), which held that there was sufficient state action in the selection of delegates to national political conventions and that the apportionment of delegates to such conventions presented a justiciable question. Relying on such authorities this Court recognized it had jurisdiction over the subject matter of plaintiffs' claims then asserted. 343 F.Supp. 168, 173–174.

But defendants would have this Court now reverse its prior conclusion. They assert that such is required by O'Brien v. Brown and Keane v. National Democratic Party, 409 U.S. 1, 92 S.Ct. 2718, 34 L.Ed.2d 1 (1972), decided on July 7, 1972, as well as the opinion of Mr. Justice Rehnquist in Republican Committee v. Ripon Society, 409 U.S. 1222, 93 S.Ct. 1475 (1972), at the time he stayed the effect of this Court's April 28, 1972 order. In his opinion Mr. Justice Rehnquist stated that this Court, at the time it entered its April 28, 1972 order, did not have the benefit of the Supreme Court's opinion in O'Brien. This Court has now had an opportunity to consider the O'Brien opinion and is not persuaded that the matter there is indistinguishable from the constitutional questions presented in this case.

O'Brien v. Brown and Keane v. National Democratic Party were considered together by the Supreme Court on applications to stay the judgment of the Court of Appeals of the District of Columbia Circuit. Both cases involved the seating of delegates at the 1972 National Democratic Convention. In Keane the plaintiffs challenged the recommendation of the Credentials Committee of the Democratic National Convention to unseat 59 uncommitted delegates from Illinois on the ground, among others, that they had been elected in violation of the "slate-making" guideline adopted by the Democratic Party in 1971. The District Court dismissed the complaint and the Court of Appeals rejected the contentions of the unseated delegates that the Committee's action violated their constitutional rights.

In O'Brien the Credentials Committee recommended unseating 151 of 271 delegates from California committed by California law to Senator McGovern under that State's "winner-take-all" primary system. The Committee concluded that that system violated the 1968 Democratic National Convention mandate calling for reform in the party delegate selection process. The complaint challenging the action of the Committee was dismissed by the District Court. The Court of Appeals, however, concluded that the Committee action violated the Constitution.

In granting the stays applied for in O'Brien and Keane, the majority of the Supreme Court expressly stated that these were not cases "in which claims are made that injury arises from invidious discrimination based on race in a primary contest within a single State." 409 U.S. 4, n. 1, 92 S.Ct. at 2720. Rather the cases involved claims of the power of the federal judiciary to review actions heretofore thought to lie in the control of political parties, that is, intervention "in the internal determinations of a national political party, on the eve

of its convention, regarding the seating of delegates." 409 U.S. 4, 92 S.Ct. at 2720. " * * * for nearly a century and a half the national political parties themselves have determined controversies regarding the seating of delegates to their conventions." 409 U.S. 5, 92 S. Ct. at 2720.

■■ But the case here does not involve the internal determinations of a party as to the seating of delegates. Here the question presented is whether there will be a deviation from the equality of voting power at the Republican 1976 Convention and if so whether such is supported by legitimate justification. This is the one-man-one-vote question that is to be found in the process of a national political party convention which nominates candidates for President and Vice President of the United States. This was noted by Mr. Justice Pitney in his concurring opinion in Newberry v. United States, 256 U.S. 232, 285–286, 41 S.Ct. 469, 484, 65 L.Ed. 913 (1921), when he stated: " * * * every voter comes to the polls on the day of the general election confined in his choice to those few candidates who have received party nominations * * *. As a practical matter, the ultimate choice of the mass of voters is predetermined when the nominations have been made." Such being the case, courts are competent to examine the matter of the equality of voting power of delegates at conventions and any deviations therefrom. State of Georgia v. National Democratic Party, 145 U.S.App.D.C. 102, 109, 447 F.2d 1271, 1278 (1971). The distinguishing subject matter of *O'Brien* furnishes no justification for this Court to hold that it is without jurisdiction in this case. Defendants' motion to dismiss will be denied.

Defendants' motion to strike from the supplemental complaint is without merit. Plaintiffs' allegations comparing mathematically representatives to the 1976 Republican Convention by regions are not immaterial or irrelevant to the claims asserted by plaintiffs. The motion to strike will be denied.

## II. Cross-Motions for Summary Judgment

Plaintiffs have moved for a summary judgment on the grounds that the 1976 formula is constitutionally invalid. Defendants' motion for summary judgment, in addition to challenging this Court's jurisdiction and claiming that the subject matter of this action is not justiciable, contends that the 1976 formula is constitutionally sound. There are no genuine issues of material fact and this Court, having considered the pleadings, memoranda and affidavits as well as argument of counsel, finds that this case may be appropriately disposed of by summary judgment.

Defendants' motion for summary judgment will be denied. Hereinbefore this Court has found that it has jurisdiction and that the subject matter is justiciable. Defendants' contention that the 1976 formula does not violate the Constitution is without merit as will hereinafter be pointed out.

To understand plaintiffs' challenge of the validity of the 1976 formula, it is necessary to break down Rule 30 into several parts and to treat each separately.

■ 1. The basic delegation at the 1976 Republican Convention will consist of 1605 delegates, or 72% of the total number of delegates. As has been pointed out, those delegates result from apportioning to the states 3 delegates for each of the 535 electoral college votes. At the 1972 Republican Convention 80% of the total delegates were selected under the 1972 formula on the basis of electoral college votes. This Court in its earlier opinion did not find the selection of the basic delegation to the 1972 Convention and the formula of apportionment of such delegation lacking in merit. 343 F. Supp. 168. Nor will the selection of the basic delegation to the 1976 Convention as provided by the 1976 formula infringe on the Equal Protection Clause. Bode v. National Democratic Party, 146 U.S.App.D.C. 373, 379–380, 452 F.2d

1302, 1308–1309 (1971). Nor do plaintiffs object to the use of the electoral college vote as the basis for part of the apportionment to the 1976 Convention. P. 34, Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Summary Judgment.

2. Of the remaining delegates to the 1976 Convention, 27% will be bonus delegates.

■ (a) Of that 27%, 11% will be allocated on a uniform basis of 4.5 delegates (rounded to 5) to each of the 49 states which cast its electoral vote for the 1972 Republican nominee for President. The 1972 formula allocated as a bonus 6 delegates to each of the 43 states which cast its electoral vote for the Republican nominee for President in 1968 or, in that or a subsequent election, elected a Republican Senator or Governor or Republican majority to the state's delegation to the House of Representatives of the Congress. In the prior opinion, this Court held that the allocation of the 6 bonus delegates to states qualifying for them did not meet constitutionally permissible standards in that such allocation under the 1972 formula violated the Equal Protection Clause of the Fourteenth Amendment. 343 F. Supp. 168, 177. The 1976 formula in allocating the 4.5 bonus delegates is essentially the same in this respect as the invalid 1972 formula and is equally invalid.

This conclusion was not reached without due consideration having been given to the some eighteen affidavits and statistical data submitted by defendants in support of their motion for summary judgment. All of the affiants are persons experienced in the working of the political process and particularly in the functioning of the Republican Party. Some now hold and others have held high government offices. Among the other affiants were professors of political science as well as officials of the Republican Party. The affidavits recorded the history of the Party's efforts over the years in developing rules for the selection of delegates to the Party's National Conventions. Some of the affidavits treated with the various interests represented at the Conventions through the delegates as well as efforts made to accommodate often conflicting interests. Some affiants expressed the view that the apportionment of delegates was a matter for the Party and not the courts. But notwithstanding the information furnished and opinions stated by the affidavits and accompanying statistics, the fact remains that the system of allocating uniform bonus delegates as provided in the 1976 formula violates the Equal Protection Clause.

■ (b) The 1976 formula also allocates 50 delegates, or 2% of the total delegates, to states on the basis of 1 additional delegate to each state which in November, 1972, or at any subsequent election held prior to January 1, 1976, elected a Republican Senator, a Republican Governor or Republicans to at least half of the state's seats in the United States House of Representatives. Again this provision is essentially the same as that in the 1972 formula for allocating uniform bonus delegates. The latter formula provided that any state, which did not cast its electoral vote in 1968 for the Republican nominee for President, would nevertheless be allocated 6 bonus delegates if at the 1968 election or any subsequent election, prior to the 1972 Convention, the state elected a Republican Senator or a Republican Governor or a Republican majority to the state's membership in the House of Representatives. The 1976 formula contains the same infirmity as was found in the 1972 formula. Both violate the Equal Protection Clause. 343 F.Supp. 168, 177.

(c) When this Court heretofore declared unconstitutional the allocation of a uniform number of bonus delegates as provided by the 1972 formula, it also declared:

That a bonus system which would reward states producing Republican victories in certain specified elections, by allocating a number of delegates

reasonably proportionate to the state's electoral college votes or the number of Republican votes which produced the victory, or some combination of these factors, would have a constitutionally rational basis. [343 F.Supp. at 177.]

The 1976 formula apportions 312 delegates, or 14% of the total delegates, to states on the basis of 60% of the electoral vote of each of the 49 states which cast its electoral vote for the 1972 Republican nominee for President. Thus, in this respect, the 1972 Republican Convention conformed the 1976 formula with this Court's earlier opinion and order.

But plaintiffs challenge this apportionment of bonus votes as being unreasonable and not related to the actual Republican votes cast in 1972 for the Republican nominee for President. They base their case principally on statistical data and conclusions they draw therefrom. Thus, for example, they would show that based on the total number of Republican votes cast in the eight most populated states compared to those cast in the six least populated states the former would be underrepresented in the 1976 Convention while the latter would be greatly overrepresented. And they argue that Massachusetts, the only one of the 50 states which did not cast its electoral vote for the 1972 Republican nominee for President, would not only be grossly underrepresented in the 1976 Convention but it in fact would be penalized.

But plaintiffs' arguments overlook the difficulty in determining just what is the voting strength of a political party in any state. It is common knowledge that in modern day political life in the United States, the individual voter in large part is not wed to any political party. There is what has become known as the political independent who disa-

vows affiliation with any political party and casts his vote for the nominee or issue or both. In fact, in 15 states there is no registration of voters by party.[5]

The results of the 1972 national election bear out the conclusion that the American voter picks and chooses from among candidates and political parties. A few examples will suffice. While 49 states cast their electoral votes for the Republican nominee for President, at the same time the voters in 16 of the 33 states voting for United States Senators elected Democrats. Out of the 18 states electing Governors, the voters in 11 states chose Democrats. In California 23 of the 43 House members elected were Democrats. 19 of the elected 24 Texas members of the House of Representatives were Democrats. And in Pennsylvania the voters chose 13 Democrats and 12 Republicans as House members. Florida voters sent 11 Democrats and 4 Republicans to the House of Representatives as a result of the November 1972 election.[6]

While the relative strength of the two major parties in the total number of votes cast in 1972 may be questioned in light of the changing patterns in the choice of candidates for the several offices, there can be no doubt of the strength of the Republican Party when measured by the electoral college vote. It was the electoral vote of 49 states that elected the 1972 Republican nominee for President. And it was on that vote that the 1976 formula would apportion some of the bonus delegates. Massachusetts, contributing nothing to the Republican strength by this ultimate test, cannot be said to be penalized by being denied such bonus delegates.

■ Plaintiffs' challenge to such apportionment of bonus delegates is unpersuasive and, therefore, does not alter this Court's earlier conclusion that a system which rewards states producing

---

5. P. 12, Cramer affidavit, in support of defendants' motion for summary judgment.

6. The results and comparisons were gleaned from Exhibits L–6, L–7 of the Osborn July

31, 1973, affidavit in support of plaintiffs' motion for summary judgment.

Republican victories, by allocating a number of delegates reasonably proportionate to a state's electoral vote, has a constitutionally rational basis.

3. The 1976 formula allocates 14 delegates to the District of Columbia, 8 delegates to Puerto Rico, 4 delegates to the Virgin Islands and 4 to Guam. Plaintiffs assert that in each case the allocation is arbitrary and capricious and results in overrepresentation.

■ Under the 1972 formula, 9 delegates were allocated to the District of Columbia. Plaintiffs challenged that allocation and sought to have it declared impermissible. This Court refused to do so. 343 F.Supp. at 177. The increase in the District of Columbia delegation from 9 to 14 delegates is in keeping with the Republican Party's decision to enlarge the 1976 Convention by increasing the delegates to 2242, or two-thirds again the size of the 1972 Convention. The increase in the number of the delegates from the District of Columbia in 1976 will be in keeping with the enlargement of the Convention that year. This Court will not disturb that allocation.

In the earlier opinion, this Court upheld the 1972 formula allocation of delegates to the Territories. 343 F.Supp. at 178. The increase in the number of delegates in 1976 from the Territories is appropriate in view of the increase in the total number of delegates at that Convention.

In view of the foregoing, defendants' motion for summary judgment that their 1976 formula is constitutionally sound will be denied insofar as it embraces the uniform allocation of bonus delegates. Plaintiffs' motion for summary judgment will be granted in part in that this Court will declare the uniform allocation of bonus delegates as violating the Equal Protection Clause of the Constitution and will enjoin defendants from allocating bonus delegates on such a uniform system. In all other respects plaintiffs' motion for summary judgment will be denied, including the conditioning of the effectuation of any

rule which may be adopted by defendants for the apportionment of delegates to the 1976 Convention upon approval by this Court.